UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

QIUZHU YE,

          Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, et al.,

          Defendants.

Case No. 26-cv-06417-JST

**ORDER GRANTING TEMPORARY
RESTRAINING ORDER**

Re: ECF No. 2

Before the Court is Plaintiff Qiuzhu Ye's motion for an emergency temporary restraining order. ECF No. 2. The Court will grant the motion.

## I.    BACKGROUND

Plaintiff Qiuzhu Ye arrived in the United States from China in 2008 and applied for asylum shortly thereafter. ECF No. 2-2 ¶ 4 (Ye Decl.). Unable to understand English and confused about the proceedings, she submitted a statement "reveal[ing] only that [she] was pregnant and not [] disclos[ing] everything that had happened to [her] in China." *Id*. ¶ 7. After a June 11, 2018 hearing, Ye's asylum claims were denied. *Id*. ¶¶ 8–9. Although she appealed the denial of her claims, she was unsuccessful. *Id*. ¶ 20. Ye is "currently considering filing a motion to reopen [her] case based on ineffective assistance of counsel" but has not done so. *Id*. ¶ 10. She states that she has not willfully violated the removal order because she could not read her removal order and did not understand its implications, was actively pursuing her legal rights via appeal, and did not know whether China would accept her return in light of her "past conflict" with the government. *Id*. ¶ 13.

On May 27, 2026, Ye received a Notice of Violation and Order from the Department of Homeland Security ("DHS") imposing a civil penalty of $1,820,352.00 under Section 274D of the

United States District Court
Northern District of California

Immigration and Nationality Act, 8 U.S.C. § 1324d(a)(1), for alleged willful failure to depart pursuant to a removal order. *Id*. ¶ 15; ECF No. 2-2 at 9. The notice states that the order of removal against Ye was made final on June 11, 2026, the date of her asyum hearing. *Id*. It also includes an informational page on self-deportation, which states that noncitizens may "[r]eceive forgiveness of any civil immigration fines for failure to depart after a final order of removal." *Id*. at 15.

Ye filed an administrative notice of appeal on June 1, 2026, which DHS received on June 4, 2026. Ye Decl. ¶ 16; ECF No. 2-2 at 18; *id*. at 33. On June 9, 2026, she received an invoice from Customs and Border Patrol ("CBP") dated June 4, 2026, demanding payment in full within ten days of invoice date. Ye Decl. ¶ 17; ECF No. 2-3 at 31. The invoice stated that failure to pay the penalty would result in a 4% annual accrual of interest, administrative costs assessed at 15%, and 6% annual late penalty charges. *Id*.

When Ye's attorney contacted CBP to clarify the status of the invoice in light of Ye's appeal, CBP stated that the appeal had already been adjudicated and the invoice resulted from the agency's decision. Ye Decl. ¶ 18; ECF No. 2-2 at 35. June 4, the invoice date, was the same date that the notice of appeal was received by the agency. On June 14, 2026, Ye received the appeal decision, dated June 9, 2026, which affirmed the full penalty without addressing any of the arguments raised in her notice of appeal. Ye Decl. ¶ 19; ECF No. 2-2 at 39–40.

Ye is a stay-at-home mother whose partner, the household's sole income earner, makes $3,000 a month. Ye Decl. ¶ 20. She is the primary caretaker for her partner's mother, a 76-year-old U.S. citizen who "has severe asthma, is semi-blind, cannot walk, [] requires medical appointments two to three times per week," and "cannot cook or care for herself." *Id*. ¶ 21.

Ye filed this complaint under the Administrative Procedure Act, 5 U.S.C. § 706(2), on June 26, 2026. ECF No. 1. She filed the present ex parte emergency motion for a temporary restraining order on the same day. *Id*. The case was assigned to this Court on June 29, 2026. ECF No. 4.

## II.     JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

United States District Court
Northern District of California

### III.   LEGAL STANDARD

The Court applies a familiar four-factor test on a motion for a temporary restraining order. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest."  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  Where the plaintiff does not establish a likelihood of success on the merits but merely establishes "serious questions going to the merits," a preliminary injunction may still issue if the plaintiff can show that the balance of hardships "tips sharply in [his] favor," irreparable injury is likely, and the injunction is in the public interest.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

### IV.   DISCUSSION

#### A.   Likelihood of Success on the Merits

Section 274D(a)(1) of the Immigration and Nationality Act provides that "[a]ny alien subject to a final order of removal who . . . willfully fails or refuses to . . . depart from the United States pursuant to the order . . . shall pay a civil penalty of not more than [$998][1] to the Commissioner for each day the alien is in violation of this section."  8 U.S.C. § 1324d(a)(1).  On July 27, 2025, the Trump Administration issued an interim final rule ("IFR") concerning this provision.  Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations, 90 Fed. Reg. 27439 (June 27, 2025) (codified at 8 C.F.R. § 281).  As relevant here, the IFR (1) provided that DHS would issue notices of final decisions on civil penalties instead of notices of intent to fine, (2) removed the requirement that service be effected in person or by certified mail, (3) shortened noncitizens' time to file an administrative appeal within DHS from 30

---

[1] Although the statute sets a daily maximum of $500, the amount has been adjusted to $998 to account for inflation.  90 Fed. Reg. 10 (Jan. 2, 2025).

days to 15 business days, and (4) eliminated certain procedural protections, including an in-person interview and further appellate review through the Board of Immigration Appeals. *See id*. at 27441, 27444, 27449, 27450. These updated procedures are "intended to allow DHS to impose more civil penalties, more quickly, and in proportion to the sheer number of aliens who, in recent years, have unlawfully entered the United States and those who remain after a removal order or voluntary departure order . . . to deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders." *Id*. at 27442. Under the new regulations, an administrative appeal is reviewed only by a supervisory DHS officer who did not issue the original decision. 8 C.F.R. § 281.1(e)(2). That officer's decision constitutes final agency action. *Id*. § 281.1(f)(3).

Under the Administrative Procedure Act, a reviewing court "shall . . . hold unlawful and set aside agency action" that is: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right; (C) in excess of statutory authority; (D) without observance of procedure required by law; (E) unsupported by substantial evidence; or (F) unwarranted by the facts. 5 U.S.C. § 706(2). Ye argues that the penalty assessed against her is in excess of statutory authority and without observance of procedure required by law because it is time-barred, because her conduct does not satisfy the willfulness requirement of Section 274D(a)(1), and because the agency notice does not state its reasons for finding the willfulness requirement satisfied. She further argues that the penalty is contrary to constitutional right because it violates the Excessive Fines and Due Process Clauses of the U.S. Constitution. Finally, she argues that the decision to impose fines was arbitrary and capricious. The Court addresses each argument in turn.

### 1.    Time-Barred

Under 28 U.S.C. § 2462, an action for the enforcement of a civil fine or penalty "shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. Section 2462 is a "general statute of limitations for civil penalty actions" for which Congress has not enacted a specific limitations period. *See Gabelli v. SEC*, 568 U.S. 442, 444 (2013). In *DLS Precision Fab LLC v. U.S. Immigr. & Customs Enf't*, the Ninth Circuit

United States District Court
Northern District of California

applied Section 2462 to 8 U.S.C. § 1324a, which imposes penalties on employers for unlawfully employment of noncitizens. 867 F.3d 1079, 1087 (9th Cir. 2017). In doing so, the court noted that "there is no reason why § 2462 should be applied any differently for claims under the INA." *Id*.

Consistent with a substantial body of law interpreting Section 2462, the Ninth Circuit held in *DLS Precision* that the statute of limitations period starts running "from the day of the alleged violation." *Id*. In the context of penalties for the employer's failure to complete and retain I-9 forms, the five-year limitations period ran from the date that the company was no longer required to retain those forms. *Id*. at 1085. And in the context of claims for continuing employment of ineligible noncitizens, the period was measured from the last day of the ineligible noncitizen's employment. *Id*. at 1086.

Here, the statute provides for penalties that accrue for each day that the noncitizen willfully fails to depart pursuant to an enforceable removal order. 8 U.S.C. § 1324d(a)(1). The daily penalty structure in combination with Section 2462 suggests that the total fine may only take into account the five years prior to the commencement of enforcement proceedings. *See, e.g.*, *United States v. Marine Shale Processors*, 81 F.3d 1329, 1357 (5th Cir. 1996) ("Section 7413(b) contemplates a fine for each day a minor source operates in violation of law, and [S]ection 2462 limits the number of days to five years before the filing of the complaint."). The penalty imposed, which does not appear to be limited to those five years, therefore may violate Section 2462. *See* ECF No. 2-1 at 11 (Ye arguing that "[e]ven under a daily accrual theory, . . . all penalties accruing before May 12, 2021 . . . are independently time-barred").

Ye is therefore likelihood to succeed, at least in part, on the merit of her claim that the penalty levied against her is time-barred.

### 2. Willfulness

Section 274D(a)(1) only imposes penalties on a noncitizen whose failure to depart the United States pursuant to an enforceable removal order is "willful." 8 U.S.C. § 1324d(a)(1). There is a paucity of caselaw interpreting Section 274D. In other immigration-related contexts, however, the Ninth Circuit has made clear that willfulness requires knowledge and intent. *See,*

*e.g.*, *Espinoza-Espinoza v. Immigr. & Naturalization Serv.*, 554 F.2d 921, 925 (9th Cir. 1977) (noting that "[a]lthough the exact meaning of 'willful' may vary with the context in which it is used in a particular statute," in the context of willful misrepresentation of a material fact to procedure a visa, "it connotes . . . a voluntary and deliberate misstatement"); *Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005) (holding, in evaluating whether attempted entry of goods by means of a false statement is a crime of moral turpitude under the INA, that willfulness requires an act be done "deliberately and with knowledge").

According to Ye's declaration, she does not speak or read English and was never informed in her language of any obligation to depart or deadline to leave. ECF No. 2-2 ¶¶ 4, 6, 8, 9, 12. She stayed in the United States to pursue her legal rights through the appeals process. *Id.* ¶ 13. She did not know whether China would accept her return. *Id.* Under these circumstances—where Ye did not understand the consequences of the removal order and pursued an appeal for many years—the government's ability to establish that Ye refused to leave deliberately and with knowledge is doubtful.

Moreover, the applicable regulations require DHS to provide "a brief statement of the reasons for the decision" in the order imposing civil penalties. 8 C.F.R. § 281.1(c)(1). Neither the Notice of Violation nor the Appeal Decision contained any such statement, nor did they otherwise explain the basis for finding that Ye's failure to depart was willful and therefore satisfied the requirements of the statute. ECF No. 2-2 at 9, 38. Both consisted only of a sparse form on which the date of the original removal order was entered and a box repeating the language of the statute checked. *Id.* This does not suffice to establish willfulness or to satisfy the requirements of 8 C.F.R. § 281.1(c)(1). Ye is likely to succeed on the merits of her argument that her conduct does not satisfy the statutory requirements for imposing civil penalties under 8 U.S.C. § 1324d(a)(1).

### 3. Eighth Amendment Excessive Fine

The Eighth Amendment to the United States Constitution provides that "excessive fines [shall not be] imposed." U.S. Const. amend. VIII. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–610 (1993) (citation omitted). "[A] civil

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id*. at 610 (citation omitted). Civil penalties under Section 274D clearly fall within the scope of the excessive fines clause. They have no clear remedial purpose but rather expressly serve to deter unlawful entry and noncompliance with removal orders. *See* 90 Fed. Reg. at 27442.

A fine violates the Clause if it is "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Courts afford some deference to Congressional judgments about the appropriate punishment for an offense. *See U.S. Sec. & Exch. Comm'n v. Murphy*, 50 F.4th 832, 849 (9th Cir. 2022). Nonetheless, the Ninth Circuit has prescribed four factors that are generally relevant to determining whether a penalty is grossly disproportional. *Id*. These are "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id*. at 849–50.

Here, the underlying offense was the failure to self-deport in response to a removal order. It had no relation to other illegal activities. *See* ECF No. 2-2 ¶ 23 (Ye's declaration stating that "[d]uring all the years I have lived in the United States, I have filed taxes and obeyed the law. I have never been a burden on my community and consider myself to be a contributing member of society."). The Court is not aware of alternative penalties that may be imposed for the offense, so the third factor is neutral. *Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1068 (9th Cir. 2024), *cert. denied sub nom. City of Los Angeles, California v. Pimentel*, 145 S. Ct. 2735 (2025); *see also United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004) (explaining that other penalties authorized by the legislature may serve as "measures of the gravity of the offense"). Finally, Ye's offense appears to have caused no harm. Taken together, these factors suggest that the penalty assessed against Ye is "grossly disproportional."

A fine of more than $1.8 million, constituting fifty times Ye's annual household income, likely violates the Excessive Fines clause.

#### 4.    Due Process

Ye also argues that the $1.8 million fine was imposed without due process. ECF No. 2-1

7

at 16–18.  She does not appear to have raised this argument in her appeal to DHS.  See ECF No. 2-2 at 23–26.  "The APA requires that plaintiffs exhaust administrative remedies before bringing suit in federal court."  *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965 (9th Cir. 2006) (citing 5 U.S.C. § 704); *see also Nat'l Parks & Conservation Ass'n v. BLM*, 606 F.3d 1058, 1065 (9th Cir. 2010) ("As a general rule, [courts] will not consider issues not presented before an administrative proceeding at the appropriate time." (quoting *Marathon Oil Co. v. United States*, 807 F.2d 759, 767–68 (9th Cir. 1986))).  The Court cannot conclude at this time that Ye is likely to succeed on the merits of her due process claim and defers consideration of the issue for future proceedings.

### 5.    Arbitrary and Capricious

An agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Id*.

Here, DHS failed to consider Ye's individual circumstances, provided no explanation for the penalty amount, and issued a form decision with no individualized analysis.  The Appeal Decision, made—by the agency's own admission—on the same day that the appeal was received, affirmed the penalty without addressing a single argument Ye raised.  The Court concludes that Ye is likely to succeed on the merits of her claim that the penalty determination was arbitrary and capricious.

### B.    Irreparable Harm

To justify emergency relief, a plaintiff must demonstrate that irreparable harm is "likely" rather than merely "possible."  *Winter*, 555 U.S. at 22.  Ye has met her burden for at least two reasons.  First, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury."  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

8

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  Because Ye has shown that the fine likely violates the Eighth Amendment, she has also shown irreparable constitutional harm.

Ye has also shown material irreparable harm.  As she argues, the ten-day payment deadline listed on the invoice she received has expired.  ECF No. 2-1 at 19.  She is now subject to compounding debt as a result of administrative fees, interest, and late penalties; collection litigation and referrals; credit bureau reporting; and administrative offsets of any eligible federal or state payments due to Ye.  Ye Decl. ¶¶ 17, 24–27; ECF No. 2-3 at 31.  As a result, she faces irreparable credit damage and the stress of impending financial instability.  These impacts would also extend to her partner and her two dependents, a minor child and a disabled elder relative.  Ye Decl. ¶¶ 20–21.  Ye has established a high likelihood of irreparable harm in the absence of a temporary restraining order.

### C.     Balance of Equities and Public Interest

Finally, the balance of the equities and the public interest tip sharply in Ye's favor.  These factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).  Here, while Ye would suffer potentially irreversible constitutional injury, credit damage, and financial instability, there is no harm to the government from a short delay in recovering the penalty amount while these proceedings are pending.  If the penalty is ultimately enforced, the government may collect the full amount with interest at that time.  The nature of Ye's conduct and absence of evidence of willfulness, as well as her long history as a law-abiding and tax paying community member, also support emergency relief.

### D.     Bond

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The court has "discretion as to the amount of security required, if any," and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)

United States District Court
Northern District of California

(citation modified).  Here, the Court has concluded there is no harm to the government from temporarily enjoining collection of the penalty.  Moreover, Ye has demonstrated that she is indigent, with no independent income and a household income of $3,000 a month.  ECF No. 1-3.  The Court waives the security requirement.

**CONCLUSION**

Ye has shown a high likelihood of success on the merits, irreparable harm, and that the balance of the equities and public interest support emergency relief.  Her motion for a temporary restraining order is therefore granted.  IT IS HEREBY ORDERED that:

Defendants and their officers, agents, employees, and all persons acting in concert with them are TEMPORARILY RESTRAINED AND ENJOINED from, as to the civil penalty of $1,820,352.00 assessed against Plaintiff under Penalty Tracking Number C260094794: (a) enforcing, collecting, or taking any action to collect the penalty or any associated debt; (b) referring the debt to the U.S. Department of Justice for collection litigation; (c) initiating or continuing any administrative offset of federal or state payments due to Plaintiff; (d) referring the debt to any private collection agency; (e) reporting the debt to any national credit bureau or credit reporting agency; (f) taking the debt into consideration, as a negative factor, in any immigration-related proceeding involving Plaintiff; and (g) assessing any interest, administrative costs, or late payment penalties during the pendency of this Order.

This Order takes effect upon entry and remains in effect for fourteen (14) days from the date and time below, unless extended for good cause or with Defendants' consent.  Fed. R. Civ. P. 65(b)(2).  Defendants are ORDERED TO SHOW CAUSE in writing why a preliminary injunction should not issue on the same terms.  The hearing shall be held on July 13, 2026, at 9:30 a.m. by Zoom videoconference.  Defendants' opposition is due July 6, 2026; Plaintiff's reply is due July 9,

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

10

United States District Court
Northern District of California

2026.  Plaintiff shall forthwith serve this Order and the moving papers on Defendants and the United States Attorney for the Northern District of California.

**IT IS SO ORDERED.**

Dated:  June 29, 2026



_____
JON S. TIGAR
United States District Judge