Xiao Qian Mu, CA SBN 356597
Law Offices of Sarah Xiao Qian Mu
181 Devine Street
San Jose, CA 95110
Phone: (408) 459-5858 | Fax: (408) 228-3734
Email: xmu@mupllclaw.com

Attorney for Plaintiff Qiuzhu Ye

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| QIUZHU YE,<br><br>Plaintiff,<br><br>vs.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security; RODNEY S. SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and U.S. CUSTOMS AND BORDER PROTECTION,<br><br>Defendants. | CASE NO.: 4:26-cv-06417-JST<br><br>ASSIGNED TO DISTRICT JUDGE: HON. JON S. TIGAR<br><br>**PLAINTIFF QIUZHU YE'S REPLY TO DEFENDANTS' OPPOSITION TO PRELIMINARY INJUNCTION**<br><br>Hearing Date: August 31, 2026 & 2:30PM<br>Location: Via Zoom Conference |

**TABLE OF CONTENTS**


**I. INTRODUCTION** ........ 1

**II. ARGUMENT** ........ 2

**A. THE PENALTY REMAINS TIME-BARRED UNDER 28 U.S.C. § 2462.** ........ 2

**B. DEFENDANTS HAVE NOT ESTABLISHED WILLFULNESS UNDER 8 U.S.C. § 1324d.** ........ 3

**C. THE $1,820,352 PENALTY VIOLATES THE EIGHTH AMENDMENT'S EXCESSIVE FINES CLAUSE.** ........ 6

**D. THE PENALTY IS ARBITRARY AND CAPRICIOUS UNDER THE APA.** ........ 8

**E. PLAINTIFF'S DUE PROCESS CLAIM IS NOT BARRED AND, IF REACHED, SUCCEEDS ON THE MERITS.** ........ 10

**1. The Merits Favor Plaintiff Under Each *Mathews* Factor.** ........ 10

**2. Plaintiff's Due Process Claim Was Only Triggered After the Appeal Was Filed.** ........ 11

**F. IRREPARABLE HARM, BALANCE OF EQUITIES, AND PUBLIC INTEREST FAVOR PLAINTIFF.** ........ 12

**III. CONCLUSION AND PRAYER FOR RELIEF** ........ 14

**CERTIFICATE OF SERVICE** ........ 16

# TABLE OF AUTHORITIES

## Cases

*Adams v. Woods*,
6 U.S. 336 (1805) .......... 3

*Austin v. United States*,
509 U.S. 602 (1993) .......... 2, 7

*Cal. Pharmacists Ass'n v. Maxwell-Jolly*,
563 F.3d 847 (9th Cir. 2009) .......... 13

*Gabelli v. SEC*,
568 U.S. 442 (2013) .......... 3

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) .......... 6

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 10, 11

*McCarthy v. Madigan*,
503 U.S. 140 (1992) .......... 12

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
463 U.S. 29 (1983) .......... 9

*Pimentel v. City of Los Angeles*,
115 F.4th 1062 (9th Cir. 2024) .......... 8

*Safeco Insurance Co. of America v. Burr*,
551 U.S. 47 (2007) .......... 4

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) .......... 13

*United States v. 817 N.E. 29th Dr.*,
175 F.3d 1304 (11th Cir. 1999) .......... 8

*United States v. Hughes*,
113 F.4th 1158 (9th Cir. 2024) .......... 4

*United States v. Salama*,
891 F. Supp. 2d 1132 (E.D. Cal. 2012) .......... 6

## Statutes

5 U.S.C. § 706(2)(A) .......... 10

8 U.S.C. § 1253(a) .......... 4

8 U.S.C. § 1253(a)(1)(A) .......... 8

8 U.S.C. § 1324d .......... passim

8 U.S.C. § 1324d(a)(1) ........ 9

21 U.S.C. § 881(a)(4) ........ 7

21 U.S.C. § 881(a)(7) ........ 7

28 U.S.C. § 2462 ........ 1, 2, 3, 14

**Regulations:**

8 C.F.R. § 281.1 ........ 10

8 C.F.R. § 281.1(c)(1) ........ 9, 11

8 C.F.R. § 281.1(e)(2) ........ 11

90 Fed. Reg. 27,439, 27,442 (June 27, 2025) ........ 7

90 Fed. Reg. 27,439, 27,442-43 (June 27, 2025) ........ 5

90 Fed. Reg. 27,439 at 27,451 ........ 10

90 Fed. Reg. 27,439, 27,456 (June 27, 2025) ........ 9

**Other:**

Federal Rule of Civil Procedure 65(c) ........ 14

## I. INTRODUCTION

Plaintiff's removal proceeding was poorly handled by her then counsel and she was ordered removed on April 20, 2011, when she was told that she was not being removed if she chose to appeal, so, she appealed. Suppl. Decl. ¶¶ 5-7. Plaintiff is a primary caretaker of her partner's elderly mother and their minor child while her partner brings in $3,000.00 a month for the entire family. Pl's Decl., ECF No. 2-2 at ¶¶ 20-22. Plaintiff received a civil penalty notice in the amount of $1,820,352.00 on or about May 27, 2026 for a removal order that she never fully understood. Pl's Decl., ECF No. 2-2 at ¶ 15. She promptly appealed, only found out that the final decision was made on effectively the same day when her appeal was received. Pl's Decl., ECF No. 2-2 at ¶¶ 16-19. This action ensued. On June 29, 2026, this Court granted Plaintiff's application for a temporary restraining order, finding that Plaintiff is likely to succeed on the merits of four independent claims: (1) that the $1,820,352 civil penalty is time-barred under 28 U.S.C. Section 2462; (2) that the government cannot establish the willfulness required by 8 U.S.C. Section 1324d; (3) that the penalty violates the Eighth Amendment's Excessive Fines Clause; and (4) that the penalty is arbitrary and capricious under the Administrative Procedure Act. ECF No. 10 at 3-9. The Court further found that the remaining preliminary injunction factors, including irreparable harm, balance of equities, and public interest, favor Plaintiff. *Id*. at 8-9.

Defendants' Opposition does not disturb any of these findings. It adds two exhibits—the EOIR automated case-information printout and the Ninth Circuit decision—and neither supplies evidence that Plaintiff was advised, in a language she understood, of a duty to self-depart or of the daily civil penalties associated with nondeparture. ECF Nos. 29-1, 29-2. Defendants' Opposition recycles arguments the Court has already considered and rejected, repackaging them with additional case citations and two supporting documents from their record that, upon examination, are either inapposite or affirmatively support Plaintiff's position.

Here are only few examples of Defendants flawed arguments. On the statute of limitations, Defendants offer a continuing-violation theory whose arithmetic does not match the penalty actually assessed. On willfulness, Defendants defy its own record, completely disregard the fact

that even their own record do not support the notice that Plaintiff was willful. Plaintiff did not even know when she was ordered removed, Suppl. Decl. ¶¶ 5-6, 12-14, and never received any written order until this litigation, when her current attorney received it from the government, Suppl. Decl. ¶ 15. On the Eighth Amendment, Defendants contend that a $1.8 million penalty against an individual whose annual household income is $36,000 is not grossly disproportionate. They further distinguish civil from criminal sanctions and argue that this civil assessment is not punitive, disregarding *Austin v. United States*, which holds that the relevant question is not whether the proceeding is civil or criminal, but whether the sanction constitutes punishment. On the APA, Defendants maintain that a checked-box form with no individualized analysis satisfies reasoned decisionmaking. None of Defendants' arguments withstands any scrutiny.

As set forth below, Defendants’ Opposition provides no basis for the Court to depart from its prior analysis. The Court should convert the TRO into a preliminary injunction on the same terms.

## II. ARGUMENT

Defendants' Opposition addresses six categories of arguments. Plaintiff responds to each in turn, demonstrating that Defendants have failed to identify any legal error in this Court's TRO analysis or to introduce any new evidence warranting a different result. Each of the Court's four independent bases for finding likelihood of success on the merits remains sound, and the equitable factors continue to favor Plaintiff. The following subsections respond to the corresponding sections of Defendants' Opposition.

### A. THE PENALTY REMAINS TIME-BARRED UNDER 28 U.S.C. § 2462.

Defendants contend that the $1,820,352 penalty covers only the five-year window preceding the May 12, 2026 assessment, thereby complying with 28 U.S.C. § 2462. This argument fails for multiple independent reasons.

First, Defendants' arithmetic does not fully support their theory: (1) The DHS Form 281 states that the removal order became final on June 11, 2018; (2) Five years immediately preceding the May 12, 2026 assessment spans 1,826 days because that period includes February 29, 2024. At

$998 per day, 1,826 days yields $1,822,348, not the $1,820,352 actually assessed. The exact assessment equals 1,824 days at $998 per day. This two-day discrepancy, together with the agency decisions' failure to identify the assessed start and end dates, leaves the calculation unexplained and suggests that the five-year-window theory in Defendants' litigation brief is a post hoc rationalization.

Second, even accepting Defendants' daily-accrual theory, the continuing-violation doctrine cannot rescue the penalty. The premise of a "continuing violation" under Section 1324d is that Plaintiff "willfully" failed to depart on each day in question. If Plaintiff's continued presence was not willful, and this Court has already found "the government's ability to establish that Ye refused to leave deliberately and with knowledge is doubtful," ECF No. 10 at 5-6, then there is no daily violation to accrue. The continuing-violation doctrine presupposes the very element this Court found lacking.

Third, treating each day of presence as a new, independent violation effectively nullifies Section 2462 for any long-term overstay. Under Defendants' theory, the government could wait indefinitely and then capture a rolling five-year window of penalties at any time. This reading conflicts with the repose purpose of statutes of limitations that the Supreme Court emphasized in *Gabelli v. SEC*, 568 U.S. 442, 448 (2013). Section 2462 exists to prevent the government from sitting on its enforcement rights; Defendants' construction would render that protection illusory. As Chief Justice Marshall stated in *Adams v. Woods*, 6 U.S. (2 Cranch) 336, 341-42 (1805), it "would be utterly repugnant to the genius of our laws" if actions for penalties could "be brought at any distance of time."

This Court already found that Plaintiff has a "likelihood to succeed, at least in part, on the merit of her claim that the penalty levied against her is time-barred." ECF No. 10 at 5. Defendants' Opposition identifies no legal error in that analysis and offers no new evidence. The Court should reaffirm its finding.

**B. DEFENDANTS HAVE NOT ESTABLISHED WILLFULNESS UNDER 8 U.S.C. § 1324d.**

The undisputed record establishes that Plaintiff does not speak or read English, holds only a

vocational school diploma, and has not worked since 2010. Suppl. Decl. ¶¶ 3-4; Pl's Decl., ECF No. 2-2 at ¶ 4. On the day of her individual hearing, a different attorney whom she had never met appeared on her behalf, and she could not speak to or understand that attorney. Pl's Decl., ECF No. 2-2 at ¶ 8; Suppl. Decl. ¶ 7. She did not learn the outcome of the hearing until the next day, when the former attorney's assistant called and told her to appeal, framing the removal order as something that would be issued only if she chose not to appeal. Pl's Decl., ECF No. 2-2 at ¶ 9; Suppl. Decl. ¶ 7. Plaintiff never spoke with the attorney directly, communicated only with the legal assistant, and was never provided any written document or court order. Suppl. Decl. ¶¶ 8-9. She never received a copy of her removal order from her former counsel's office or from any government agency; the first time she saw a copy was during this litigation, when her current attorney received it from the government. Suppl. Decl. ¶ 15. At no point did anyone explain to Plaintiff in Mandarin Chinese that she had been ordered removed, that she had a legal obligation to depart, or that there could be financial consequences for remaining. Suppl. Decl. ¶ 11. Plaintiff's confusion was so profound that she mistakenly identified the date of her own removal hearing as June 11, 2018, a date seven years after the actual hearing, because June 11, 2018 was the only date on the civil penalty notice she received in 2026 and she had no independent knowledge of any other date. Suppl. Decl. ¶¶ 5-6, 12-14.

Defendants contend that “willfully” under 8 U.S.C. § 1324d means merely “knowing or reckless” under *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), and *United States v. Hughes*, 113 F.4th 1158 (9th Cir. 2024). This argument fails at every level.

First, the *Safeco/Hughes* framework does not control here. *Safeco* interpreted "willful" in a limitation provision for actions under the Fair Labor Standards Act, covers claims of reckless violation the Fair Credit Reporting Act, where Congress used "willfully" in a civil provision alongside "knowingly and willfully" in a parallel criminal provision. *Hughes* applied the same logic to the Bank Secrecy Act's parallel structure. Section 1324d has no such structure. The criminal failure-to-depart provision, 8 U.S.C. § 1253(a), uses distinct language ("willfully fails or refuses to depart" within a 90-day window) tied to a criminal mens rea context. Defendants cannot import a

standard derived from a different statutory architecture. Even under a "knowing or reckless" standard, DHS has not established willfulness. "Knowing" requires actual knowledge of the duty to depart. Plaintiff does not speak or read English, Pl's Decl., ECF No. 2-2 at ¶ 4; Suppl. Decl. ¶ 3, was never informed in her language of any departure obligation, Suppl. Decl. ¶ 11, and pursued appellate remedies through the federal courts, Pl's Decl., ECF No. 2-2 at ¶¶ 12-13. Plaintiff never received any copy of her removal order from her former counsel's office or from any government agency; the first time she saw a copy was during this litigation, when her current attorney received it from the government. Suppl. Decl. ¶ 15. This Court already found that "the government's ability to establish that Ye refused to leave deliberately and with knowledge is doubtful." ECF No. 10 at 5-6. A person who relies on counsel and pursues legal remedies through the appeals process does not act with conscious disregard of a known risk.

Second, regarding the willfulness analysis, the Government quotes 90 Fed. Reg. 27,439, 27,442-43. The rulemaking cited by the Government itself states that an alien subject to a failure-to-depart penalty "was made aware of the civil penalties associated with failing to comply with the removal or voluntary departure order"; and that "the alien's immigration court records will typically demonstrate that the alien was aware of the obligation to depart the United States"; and that "DHS also has the ability to examine the alien's immigration court documents to verify that the alien received these warnings and was on notice of the departure obligation." Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations, 90 Fed. Reg. 27,439, 27,442-43 (June 27, 2025). It further explains that DHS's decision to impose civil monetary penalties will typically be based on records establishing liability. *Id*. The record the Government has furnished, however, does not satisfy any of these premises. The only documents Defendants produced relating to Plaintiff are the EOIR case-status printout and the Ninth Circuit memorandum decision. ECF Nos. 29-1, 29-2. Neither reveals that Plaintiff was aware of her obligation to depart the United States or was made aware of the civil penalties associated with failing to comply with the removal order. The government's own regulatory framework thus confirms that the willfulness finding here lacks the evidentiary foundation DHS's own rule contemplates.

Defendants' "willful blindness" theory conflates a language barrier with deliberate avoidance of knowledge. Willful blindness requires deliberate actions taken to avoid learning the truth. See *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). Defendants characterize Plaintiff's admission that she "never read [her] removal order" as "patently reckless." But Plaintiff never received a copy of the removal order from her former counsel's office or from any government agency. Suppl. Decl. ¶ 15. The first time she saw a copy of the order was during this litigation, when her current attorney received it from the government. *Id*. Further, none of the documents Defendants have furnished throughout this litigation reveals that Plaintiff was aware of an obligation to depart the United States or was made aware of the civil penalties associated with failing to comply with the removal order. ECF Nos. 29-1, 29-2.

Third, Defendants' reliance on *United States v. Salama*, 891 F. Supp. 2d 1132 (E.D. Cal. 2012), is inapposite. *Salama* involved false statements in naturalization proceedings and the defendant's signing of official naturalization and oath-ceremony forms, a context of active engagement with the government. *Id*. at 1145. It does not establish willful nondeparture by a person who was never told in her language that she had to leave or that daily civil penalties would accrue.

Finally, the frivolous-asylum finding does not establish willfulness, it further showcases what ineffective assistance of counsel can do to a victim's immigration filing.

None of the arguments or records the Government presented prove that Plaintiff knowingly defied a removal order or understood that she had a duty to self-deport. ECF No. 29-2 at 2-3. The Government failed to show Plaintiff's willfulness to justify its civil penalty notice. The Court should convert the TRO into a preliminary injunction on the same terms.

**C. THE $1,820,352 PENALTY VIOLATES THE EIGHTH AMENDMENT'S EXCESSIVE FINES CLAUSE.**

Defendants contend that penalties under Section 1324d are not "fines" within the meaning of the Eighth Amendment because they serve a remedial purpose. Their own authority refutes this claim. The Interim Final Rule states that these penalties are "intended to . . . deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders." *Imposition*

*and Collection of Civil Penalties for Certain Immigration-Related Violations*, 90 Fed. Reg. 27,439, 27,442 (June 27, 2025). Under *Austin v. United States*, 509 U.S. 602, 610 (1993), a sanction that can only be explained as serving retributive or deterrent purposes constitutes punishment subject to the Excessive Fines Clause. This Court already so held: "Civil penalties under Section 274D clearly fall within the scope of the excessive fines clause" because "[t]hey have no clear remedial purpose but rather expressly serve to deter." ECF No. 10 at 7.

Defendants attempted to distinguish between criminal and civil sanctions and contend that only criminal sanctions can be considered punitive, civil assessment is not punitive and therefore cannot be excessive under the Eighth Amendment. That reasoning would permit the Government to levy a limitless monetary sanction merely by labeling it civil. It would also create the anomalous result that a noncriminal civil violation could produce a monetary sanction more severe than the fine ordinarily available for criminal conduct. *Austin* rejects that approach: "the question is not, as the United States would have it, whether forfeiture under §§ 881(a)(4) and (a)(7) is civil or criminal, but rather whether it is punishment." 509 U.S. at 610. *Austin* also examined the historical meaning of "fine" and concluded that the term encompasses punishment. *Id*. at 610-18. Here, DHS's own document is titled a Civil "Penalty" Notice. The plain meaning of the term 'Penalty' connotes punishment. Further, the $1,820,352 amount is punitive in both purpose and effect. That amount would be staggering for a middle-class family, let alone Plaintiff's entire household income is approximately $3,000 per month.

Defendants' *Bajakajian* analysis likewise fails. This Court already evaluated the relevant proportionality factors and found that they "suggest that the penalty assessed against Ye is 'grossly disproportional.'" ECF No. 10 at 7. Defendants offer no reason to disturb that analysis. The comparison to *Bajakajian* itself is telling: in that case, the Supreme Court held that forfeiture of $357,144 in cash was an excessive fine. Here, the Government contends that a penalty of $1,820,352 imposed on a non-English-speaking stay-at-home mother whose entire household income is $3,000 per month is neither punitive nor excessive. If $357,144 was grossly disproportionate in *Bajakajian*, the penalty here—more than five times that amount and assessed

against an individual with no ability to pay—is a fortiori disproportionate.

On Factor 4 (comparison to criminal penalties), Defendants' argument backfires. A criminal defendant who willfully fails to depart faces up to four years' imprisonment and “a fine” under 8 U.S.C. § 1253(a)(1)(A). The $1,820,352 civil penalty, with no cap on accumulation, may impose a monetary burden far beyond the ordinary fine associated with the criminal provision for the same underlying conduct. Further, Defendants are wrong to treat ability to pay as wholly irrelevant. The Ninth Circuit in *Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1069-72 (9th Cir. 2024), cert. denied, 145 S. Ct. 2735 (2025), addressed proportionality and emphasized a concrete analysis of culpability, harm, and comparable penalties. *Pimentel* does not make ability to pay a freestanding dispositive factor, but Plaintiff's financial circumstances remain relevant to the real-world severity of the sanction and, independently, to irreparable harm. This Court cited *Pimentel* in its TRO Order. ECF No. 10 at 7. A penalty exceeding $1.8 million, constituting more than 50 times Plaintiff's annual household income, is grossly disproportionate by any practical measure.

Finally, Defendants invoke a "strong presumption" that a penalty within statutory limits is constitutional, citing *United States v. 817 N.E. 29th Dr.*, 175 F.3d 1304, 1309 (11th Cir. 1999). That presumption has no application here. The per diem structure of Section 1324d creates no ceiling on total penalties; the $998 daily rate is not a cap on the aggregate amount. A statute authorizing uncapped cumulative penalties cannot claim the same presumption as one with a defined maximum. The longer a person remains in the United States, the larger the penalty grows without limit. This open-ended structure is precisely the kind of penalty that demands Eighth Amendment scrutiny, and this Court has already found that scrutiny warrants relief.

**D. THE PENALTY IS ARBITRARY AND CAPRICIOUS UNDER THE APA.**

Defendants contend that DHS's three-factor checklist satisfies the 'narrow' and 'highly deferential' arbitrary and capricious standard, and that Plaintiff's individual circumstances are irrelevant to the penalty determination. This Court has already rejected both propositions.

In granting the TRO, this Court found that 'DHS failed to consider Ye's individual circumstances, provided no explanation for the penalty amount, and issued a form decision with no

individualized analysis.' ECF No. 10 at 8. The Appeal Decision 'affirmed the penalty without addressing a single argument Ye raised.' *Id*. Defendants offer no new evidence or reasoning to disturb these findings.

Even under the deferential standard Defendants invoke, an agency must 'examine the relevant data and articulate a satisfactory explanation for its action.' *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43 (1983). DHS articulated nothing. The DHS Form 281 and Appeal Decision contain no articulated basis for the willfulness finding, in violation of 8 C.F.R. § 281.1(c)(1) (2025), promulgated at 90 Fed. Reg. 27,439, 27,456 (June 27, 2025), which requires the Notice to “set forth the basis for the determination that a violation has occurred.” A checked box is not a basis or an explanation. ECF No. 10 at 6. A one-page appeal decision that ignores every argument the appellant raised is not reasoned decisionmaking. Defendants' assertion that DHS determined willfulness "on an individualized basis" is belied by the administrative record: the appeal decision was issued within days or the same day of receipt of Plaintiff's appeal, it contains no individualized analysis of why Plaintiff's failure to depart was willful, and no supporting evidence was furnished to Plaintiff at any stage of the administrative process. The only records Defendants have produced in this litigation, an EOIR website printout and the Ninth Circuit's decision, were filed for the first time with Defendants' Opposition; they were never part of the administrative record and in any event do not address willfulness. The administrative record before this Court reflects the complete absence of the deliberative process that the APA demands.

Defendants' assertion that 'none of the circumstances [Plaintiff] lists are relevant to Section 1324d's simple inquiry' begs the very question at issue. Section 1324d requires that the alien 'willfully' failed to depart. 8 U.S.C. § 1324d(a)(1). Circumstances bearing on willfulness are therefore, by definition, relevant to the statutory inquiry. Plaintiff's language barriers, the fact that she never received any notice or understood that she needed to depart, her pursuit of legal remedies through the federal courts, and receipt of ineffective assistance of counsel all bear directly on whether her failure to depart was knowing or deliberate. An agency that refuses to consider evidence relevant to a statutory element it is required to find has acted arbitrarily and capriciously.

Defendants also mischaracterize Plaintiff's position by arguing that the civil penalty appeal 'does not present an opportunity for [Plaintiff] to relitigate her removal order.' Plaintiff does not seek to relitigate the removal order in this action. She challenges whether DHS made the willfulness determination the statute requires before imposing a penalty of $1,820,352. That is a distinct inquiry, and DHS's failure to engage with it at any stage of the administrative process is precisely the kind of agency action the APA authorizes courts to set aside. 5 U.S.C. § 706(2)(A).

**E. PLAINTIFF'S DUE PROCESS CLAIM IS NOT BARRED AND, IF REACHED, SUCCEEDS ON THE MERITS.**

Defendants contend that the procedures set forth in 8 C.F.R. § 281.1 satisfy the requirements of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and argue that this Court should dismiss Plaintiff's due process claim because Plaintiff did not raise it in her administrative appeal. Defs.' Opp., ECF No. 29 at 21 n.7. Neither argument withstands scrutiny.

**1. The Merits Favor Plaintiff Under Each *Mathews* Factor.**

Defendants invoke the *Mathews* three-factor framework, but the test they cite undermines rather than supports their position. Under *Mathews*, courts weigh (1) the private interest affected, (2) the risk of erroneous deprivation and the value of additional safeguards, and (3) the government's interest, including the burdens of additional procedures. 424 U.S. at 335. Here, each factor favors Plaintiff.

(1) <u>The private interest at stake is extraordinary</u>. DHS imposed a penalty of $1,820,352 on a stay-at-home mother with no independent income whose entire annual household income is $36,000, a ratio exceeding 50 to 1. Pl's Decl., ECF No. 2-2 at ¶¶ 20, 24; Suppl. Decl. ¶ 4. She is the sole caretaker of a 76-year-old United States citizen who cannot care for herself and the primary caregiver to a school-aged minor. Pl's Decl., ECF No. 2-2 at ¶¶ 21-22. Enforcement would render Plaintiff and her dependents completely destitute. Pl's Decl., ECF No. 2-2 at ¶ 24. The greater the private interest, the more process is required. *Mathews*, 424 U.S. at 341. Defendants' assertion that existing procedures are "sufficient to ensure a low risk of error," 90 Fed. Reg. 27,439 at 27,451, cannot be reconciled with a penalty that would financially annihilate an entire household.

(2) The risk of erroneous deprivation is high. Section 1324d requires a finding of willfulness, which turns on the alien's subjective state of mind, understanding of legal obligations, and individual circumstances. A checked-box form cannot assess subjective willfulness. As discussed in Sections B and D, DHS's Form 281 contained no articulated basis for the willfulness finding, in violation of the agency's own regulation requiring the Notice to "set forth the basis for the determination that a violation has occurred." 8 C.F.R. § 281.1(c)(1). That regulatory deficiency compounds the due process concern. Defendants' own regulation further provides that the supervisory officer shall "review the record de novo within 10 days" and "issue a decision in writing no later than 45 calendar days after the notice of appeal was filed." 8 C.F.R. § 281.1(e)(2). Here, CBP issued an invoice demanding payment on the same day the appeal was received, and the Appeal Decision followed days later without engaging a single argument Plaintiff presented. Pl's Decl., ECF No. 2-2 at ¶¶ 17-19. A process that reaches a conclusion before reviewing the appeal is not a safeguard against erroneous deprivation; it is a guarantee of it.

(3) The government's interest does not outweigh the first two factors. Defendants argue that additional process would "significantly increase the burden on the Government, given the sheer volume of aliens subject to failure-to-depart penalties." Defs.' Opp., ECF No. 29 at 24. Administrative convenience is a legitimate consideration, but it cannot excuse the complete absence of individualized analysis when imposing a $1.8 million penalty on an individual. *Mathews* does not permit the government to sacrifice procedural adequacy at the altar of volume. This factor is neutral at best and does not outweigh the extraordinary private interest and the high risk of erroneous deprivation.

Defendants also argue that Plaintiff's timely filing of her appeal proves the 15-business-day window was adequate. Filing an appeal and receiving meaningful review are distinct concepts. Plaintiff filed a detailed appeal; DHS responded with a form that addressed none of her arguments. Procedural adequacy is measured not by the opportunity to submit paper, but by the quality of the review that follows. The procedures here provided neither.

**2. Plaintiff's Due Process Claim Was Only Triggered After the Appeal Was Filed.**

Defendants argue that Plaintiff's due process claim should be dismissed because she did not raise it in her administrative appeal. Defs.' Opp., ECF No. 29 at 21 n.7. She could not have. Plaintiff's due process challenge is directed at the appeal process itself: the issuance of an invoice demanding payment on the same day her appeal was received, Pl's Decl., ECF No. 2-2 at ¶¶ 17-18, and an Appeal Decision issued days later that addressed none of the arguments she presented, *id.* at ¶ 19. These failures could not have been raised in the appeal because they had not yet occurred when Plaintiff filed it. The due process violation crystallized only after the appeal process ran its course and revealed itself to be constitutionally deficient. One cannot be required to challenge the adequacy of a proceeding before that proceeding has taken place.

Even if Plaintiff could have raised due process in her appeal, she should not be required to do so because the process was so defective that raising it would have been pointless. Exhaustion is excused where the administrative remedy is inadequate or futile. *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992). Here, the appeal was decided in one to two business days or on the same day when the appeal was received, by the same agency that imposed the penalty, using a one-page form, with no independent adjudicator and no engagement with any of Plaintiff's arguments. Pl's Decl., ECF No. 2-2 at ¶¶ 17-19; ECF No. 10 at 8. Requiring Plaintiff to have also raised a due process objection within a process that ignored every other objection she presented would elevate form over substance.

**F. IRREPARABLE HARM, BALANCE OF EQUITIES, AND PUBLIC INTEREST FAVOR PLAINTIFF.**

Defendants contend that Plaintiff cannot demonstrate irreparable harm because economic damages are compensable, that the Government suffers irreparable injury when enjoined from enforcing its statutes, and that the public interest favors enforcement. However, this Court found irreparable harm on two independent bases. The TRO Order identified both constitutional injury from the likely Eighth Amendment violation and material irreparable harm from compounding debt, credit damage, and administrative offsets. ECF No. 10 at 8-9. Defendants do not address the constitutional injury basis at all. A likely constitutional violation, standing alone, constitutes

irreparable harm. Defendants' silence on this point is dispositive.

Defendants' suggestion that a $1.8 million penalty does not constitute irreparable harm to Plaintiff defies reason. Plaintiff is a stay-at-home mother whose entire household income is $3,000 per month. She is the sole caretaker of a United States citizen 76-year-old and a school-aged minor. A penalty of this magnitude would constitute irreparable harm to any individual holding a middle-class income; against Plaintiff, it is financially annihilating. Moreover, the monetary penalty is not the only consequence: enforcement would trigger additional collection actions, credit reporting, and administrative offsets that would compound the harm to Plaintiff and her family.

Defendants' authorities are inapposite. Defendants cite *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847, 852 (9th Cir. 2009), which involved institutional plaintiffs challenging Medi-Cal reimbursement rates. That case did not involve an individual facing a $1.8 million penalty with no ability to pay and no ordinary damages remedy under the APA, 5 U.S.C. § 702. Defendants' reliance on *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025), is equally misplaced. CASA addressed the permissible scope of universal injunctions in challenges to an executive order affecting large groups. Here, the injunction affects collection of a single disputed penalty from one individual while the Court reviews its legality. The Government's interest in collecting $1.8 million from an indigent individual during the pendency of litigation is not comparable to the interests or remedial scope at issue in CASA.

In addition, Defendants' delay undermines any claim of government injury. Defendants waited eight years after the removal order became final before commencing any penalty action. Their assertion that an injunction during a few months of litigation causes irreparable injury to the government is not credible.

The key is this Court already found no harm to the government and the TRO Order expressly found that "there is no harm to the government from a short delay in recovering the penalty amount while these proceedings are pending" and that "[i]f the penalty is ultimately enforced, the government may collect the full amount with interest at that time." ECF No. 10 at 9. Defendants offer no reason to disturb this finding. Defendants contend that the public interest

favors enforcement, but the public interest is better served by requiring the government to enforce its laws through just application of statutory standards rather than through the arbitrary and constitutionally deficient process employed here. Permitting enforcement of a penalty that this Court has found likely unconstitutional and procedurally defective would undermine, not advance, the rule of law. The balance of equities and the public interest both favor maintaining the injunction.

## III. CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth above and in Plaintiff's opening brief, Defendants' Opposition adds only the EOIR printout and Ninth Circuit memorandum, neither of which supplies the missing evidence of notice or an individualized willfulness determination. It identifies no legal error in this Court's TRO analysis and provides no basis for the Court to reverse its well-reasoned findings. This Court found Plaintiff likely to succeed on the merits on four independent grounds. ECF No. 10 at 3-9. Defendants have failed to disturb any of those findings. The penalty of $1,820,352.00 remains time-barred, at least in part, under 28 U.S.C. § 2462, unsupported by a sufficient showing of willfulness, violative of the Eighth Amendment's Excessive Fines Clause, and arbitrary and capricious under the APA. Plaintiff's due-process rights were violated by a checkbox form and a summary appeal decision that addressed none of her arguments; alternatively, the Court need not reach that additional claim because the four grounds already identified independently support preliminary relief. The balance of equities and the public interest continue to favor injunctive relief.

WHEREFORE, Plaintiff Qiuzhu Ye respectfully requests that this Court:

Convert the Temporary Restraining Order (ECF No. 10) into a Preliminary Injunction on the same terms, enjoining Defendants, their officers, agents, employees, and all persons acting in concert with them from taking any action to collect, enforce, or refer for collection the $1,820,352.00 civil penalty assessed against Plaintiff pending final resolution of this action; Maintain the waiver of the bond requirement under Federal Rule of Civil Procedure 65(c); and Grant such other and further relief as this Court deems just and proper.

Dated: August 17, 2026

Respectfully submitted,

LAW OFFICES OF SARAH XIAO QIAN MU

By: /s/ Xiao Qian Mu
Xiao Qian Mu, CA SBN 356597
181 Devine Street
San Jose, CA 95110
Telephone: (408) 459-5858
Facsimile: (408) 228-3734
Email: xmu@mupllclaw.com

Attorney for Plaintiff QIUZHU YE

**CERTIFICATE OF SERVICE**

I, Xiao Qian Mu, hereby certify that on the date set forth above, I caused the foregoing PLAINTIFF'S REPLY IN SUPPORT OF PRELIMINARY INJUNCTION to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who are registered CM/ECF users. No parties in this action require service by alternative means.

By: /s/ Xiao Qian Mu

Xiao Qian Mu