United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

QIUZHU YE,

Plaintiff,

v.

UNITED STATES DEPARTMENT OF HOMELAND SECURITY, et al.,

Defendants.

Case No. 26-cv-06417-JST

**ORDER GRANTING PRELIMINARY INJUNCTION**

Re: ECF No. 10

Before the Court is the order to show cause why a preliminary injunction should not issue restraining defendants from imposing a $1.8 million civil penalty on Plaintiff Qiuzhu Ye. ECF Nos. 2, 10. The Court will issue an injunction.

## I. BACKGROUND

### A. Statutory and Regulatory Background

Under the Immigration and Nationality Act ("INA"), "[a]ny alien subject to a final order of removal who . . . willfully fails or refuses to . . . depart from the United States pursuant to the order . . . shall pay a civil penalty of not more than [$998][1] to the Commissioner for each day the alien is in violation of this section." 8 U.S.C. § 1324d(a)(1). A removal order becomes final when an Immigration Judge's ("IJ") order is not timely appealed, or after the Board of Immigration Appeals ("BIA") affirms the IJ's order. 8 C.F.R. §1241.1.

Although Section 1324d became effective in 1996, the federal government did not assess penalties under that statute until after President Trump issued Executive Order No. 13768, Enhancing Public Safety in the Interior of the United States, 82 Fed. Reg. 8799, 8800 (Jan. 30,

[1] Although the statute sets a daily maximum of $500, the amount has been adjusted to $998 to account for inflation. 90 Fed. Reg. 10 (Jan. 2, 2025).

2017), directing the Secretary of Homeland Security to "ensure the assessment and collection of all fines and penalties . . . from aliens unlawfully present in the United States." *See* 90 Fed. Reg. 27439, 27441 ("Although DHS and its predecessor, INS, have had the authority to assess civil monetary penalties for failure to depart and unlawful entry since 1996, DHS did not issue any of these penalties until after Executive Order 13768"). President Biden rescinded that order on the first day of his term and President Trump effectively reinstated it on the first day of his second term. Executive Order No. 13993, Revision of Civil Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 20, 2021); Executive Order No. 14159, Protecting the American People Against Invasion, 90 Fed. Reg. 8443, 8444–45 (Jan. 20, 2025). Immigration and Customs Enforcement ("ICE") subsequently resumed collecting penalties under Section 1324d. ECF No. 29 at 11.

On July 27, 2025, the Trump Administration issued an interim final rule ("IFR") concerning Section 1324d. *See* Imposition and Collection of Civil Penalties for Certain Immigration-Related Violations, 90 Fed. Reg. 27439 (June 27, 2025) (codified at 8 C.F.R. § 281). As relevant here, the IFR (1) provided that the Department of Homeland Security ("DHS") would issue notices of final decisions on civil penalties instead of notices of intent to fine, (2) removed the requirement that service be effected in person or by certified mail, (3) shortened noncitizens' time to file an administrative appeal within DHS from 30 days to 15 business days, and (4) eliminated certain procedural protections, including an in-person interview and further appellate review through the Board of Immigration Appeals. *See id*. at 27441, 27444, 27449, 27450; 8 C.F.R. § 281.1(c)–(f).

Under the new regulations, appeals are reviewed by a supervisory immigration officer, who considers the initial immigration officer's decision, evidence of the noncitizen's immigration history contained in DHS's administrative files, and any written filings, briefs, documentary evidence, or other relevant material timely filed by the noncitizen. 8 C.F.R. § 281.1(e)(2)–(3). That officer's decision constitutes final agency action. *Id*. § 281.1(f)(3).

If the noncitizen does not appeal or the appeal decision upholds the assessed penalty, the noncitizen receives an invoice from Customs and Border Patrol ("CBP"). ECF No. 29 at 13

(citing ECF No. 2-3 at 31). The invoice informs the noncitizen that a civil monetary penalty was imposed on the noncitizen pursuant to Section 1324d and 8 C.F.R. § 281.1. *Id.* It further explains that the noncitizen's debt is final and includes instructions for submitting payment. *Id.* It notes that a noncitizen may avoid paying the debt by voluntarily departing the country within ten days of the invoice date and confirming her departure with USCIS, CBP, or through the CBP Home mobile app. *Id.*

These procedures are "intended to allow DHS to impose more civil penalties, more quickly, and in proportion to the sheer number of aliens who, in recent years, have unlawfully entered the United States and those who remain after a removal order or voluntary departure order . . . to deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders." 90 Fed. Reg. at 27442.

**B. Factual and Procedural Background**

Ye arrived in the United States from China in 2008 and applied for asylum shortly thereafter. ECF No. 2-2 ¶ 4 (Ye Decl.). Unable to understand English and confused about the proceedings, she submitted a statement "reveal[ing] only that [she] was pregnant and not [] disclos[ing] everything that had happened to [her] in China." *Id.* ¶¶ 4, 6–7.

On April 20, 2011, a San Francisco IJ ordered Ye removed from the United States. *See* ECF No. 29-1 at 1–2. On December 20, 2012, Ye's appeal to the BIA was dismissed. *Id.* Ye then filed a petition for review ("PFR") and a motion to stay the removal order in the Ninth Circuit. *See Ye v. Sessions*, 719 F. App'x 649 (9th Cir. Jan. 15, 2013). On April 29, 2013, the Ninth Circuit granted Ye's stay of the removal order pending review of her PFR, which remained in effect until the mandate issued. ECF No. 29 at 14. On April 16, 2018, the Ninth Circuit issued its opinion denying the petition for review. *Ye*, 719 F. App'x at 649–50. The mandate issued in Ye's case on June 11, 2018. ECF No. 29 at 14.[2]

Ye is "currently considering filing a motion to reopen [her] case based on ineffective

---

[2] Ye explains that her "confusion was so profound that she mistakenly identified the date of her own removal hearing as June 11, 2018, a date seven years after the actual hearing, because June 11, 2018 was the only date on the civil penalty notice she received in 2026 and she had no independent knowledge of any other date." ECF No. 33 at 8 (citing ECF No. 33-1 ¶¶ 5-6, 12 14).

assistance of counsel" but has not done so. Ye Decl. ¶ 10. She states that "[a]t no point during [her] immigration proceedings did anyone explain to [her] in . . . [a] language [she] understand[s] that [she] had been ordered removed from the United States, that [she] had a legal obligation to depart, or that there could be financial consequences for remaining in the country." ECF No. 33-1 ¶ 11; *see id.* ¶ 10l; Ye Decl. ¶¶ 12–13. She also declares that she did not know whether China would accept her return in light of her "past conflict" with the government. Ye Decl. ¶ 13.

On May 27, 2026, Ye received a Notice of Violation and Order from DHS imposing a civil penalty of $1,820,352.00 under Section 1324d(a)(1), for alleged willful failure to depart pursuant to a removal order. Ye Decl. ¶ 15; ECF No. 2-2 at 9. The notice states that the order of removal against Ye was made final on June 11, 2018, the date the mandate issued and stay of removal lifted in Ye's PFR. *Id.* It also includes an informational page on self-deportation, which states that noncitizens may "[r]eceive forgiveness of any civil immigration fines for failure to depart after a final order of removal." *Id.* at 15.

Ye filed an administrative notice of appeal on June 1, 2026, which DHS received on June 4, 2026. Ye Decl. ¶ 16; ECF No. 2-2 at 18; *id.* at 33. On June 9, 2026, she received an invoice from Customs and Border Patrol ("CBP") dated June 4, 2026, demanding payment in full within ten days of invoice date. Ye Decl. ¶ 17; ECF No. 2-3 at 31. The invoice stated that failure to pay the penalty would result in a 4% annual accrual of interest, administrative costs assessed at 15%, and 6% annual late penalty charges. *Id.*

When Ye's attorney contacted CBP to clarify the status of the invoice in light of Ye's appeal, CBP stated that the appeal had already been adjudicated. Ye Decl. ¶ 18; ECF No. 2-2 at 35. June 4, 2026, the invoice date, was the same date that the notice of appeal was received by the agency.[3] On June 14, 2026, Ye received the appeal decision, dated June 9, 2026, which affirmed the full penalty in a form order without addressing any of the arguments raised in her notice of appeal or providing any reasoning. Ye Decl. ¶ 19; ECF No. 2-2 at 39–40.

---

[3] That the invoice was sent the same day the appeal was received gives rise to the strong inference that the appeal was decided as soon as it came in, which would suggest that Ye received even less due process than is described by this order. Because the actual appeal decision was dated June 9, 2026, however, the Court reaches no firm conclusion about the date of decision.

Ye is a stay-at-home mother whose partner, the household's sole income earner, makes $3,000 a month. Ye Decl. ¶ 20. She is the primary caretaker for her partner's mother, a 76-year-old U.S. citizen who "has severe asthma, is semi-blind, cannot walk, [] requires medical appointments two to three times per week," and "cannot cook or care for herself." *Id.* ¶ 21.

Ye filed this complaint under the Administrative Procedure Act, 5 U.S.C. § 706(2), on June 26, 2026. ECF No. 1. She filed the present ex parte emergency motion for a temporary restraining order on the same day. *Id.* The case was assigned to this Court on June 29, 2026. ECF No. 4. The same day, the Court granted a temporary restraining order and an order to show cause why a preliminary injunction should not issue. ECF No. 10. Pursuant to the parties' scheduling stipulation, the government responded to the OSC on August 1, 2026, and Ye replied on August 17, 2026. ECF Nos. 23, 29, 33. The Court held a hearing on the preliminary injunction on August 31, 2026.

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III. LEGAL STANDARD

The Court applies a familiar four-factor test on a motion for a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839–40 (9th Cir. 2001). A plaintiff "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Where the plaintiff does not establish a likelihood of success on the merits but merely establishes "serious questions going to the merits," a preliminary injunction may still issue if the plaintiff can show that the balance of hardships "tips sharply in [his] favor," irreparable injury is likely, and the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted).

United States District Court
Northern District of California

## IV. DISCUSSION

### A. Likelihood of Success on the Merits

Under the Administrative Procedure Act, a reviewing court "shall . . . hold unlawful and set aside agency action" that is: (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right; (C) in excess of statutory authority; (D) without observance of procedure required by law; (E) unsupported by substantial evidence; or (F) unwarranted by the facts. 5 U.S.C. § 706(2). Ye argues that the penalty assessed against her is in excess of statutory authority and without observance of procedure required by law because it is time-barred, because her conduct does not satisfy the willfulness requirement of Section 274D(a)(1), and because the agency notice does not state its reasons for finding the willfulness requirement satisfied. She further argues that the penalty is contrary to her constitutional rights because it violates the Excessive Fines and Due Process Clauses of the U.S. Constitution. Finally, she argues that the decision to impose fines was arbitrary and capricious. The Court addresses each argument in turn.

#### 1. Time-Barred

Under 28 U.S.C. § 2462, an action for the enforcement of a civil fine or penalty "shall not be entertained unless commenced within five years from the date when the claim first accrued." 28 U.S.C. § 2462. Section 2462 is a "general statute of limitations for civil penalty actions" for which Congress has not enacted a specific limitations period. *See Gabelli v. SEC*, 568 U.S. 442, 444 (2013). In *DLS Precision Fab LLC v. U.S. Immigr. & Customs Enf't*, the Ninth Circuit applied Section 2462 to 8 U.S.C. § 1324a, which imposes penalties on employers for unlawful employment of noncitizens. 867 F.3d 1079, 1087 (9th Cir. 2017). In doing so, the court noted that "there is no reason why § 2462 should be applied any differently for claims under the INA." *Id.*

Consistent with a substantial body of law interpreting Section 2462, the Ninth Circuit held in *DLS Precision* that the statute of limitations period starts running "from the day of the alleged violation." *Id.* In the context of penalties for the employer's failure to complete and retain I-9 forms, the five-year limitations period ran from the date that the company was no longer required

to retain those forms. *Id*. at 1085. And in the context of claims for continuing employment of ineligible noncitizens, the period was measured from the last day of the ineligible noncitizen's employment. *Id*. at 1086.

Here, the statute provides for penalties that accrue for each day that the noncitizen willfully fails to depart pursuant to an enforceable removal order. 8 U.S.C. § 1324d(a)(1). Under the repeated violations doctrine, courts treat each such daily penalty as a new violation for statute of limitations purposes. *See, e.g.*, *United States v. Marine Shale Processors*, 81 F.3d 1329, 1357 (5th Cir. 1996) ("Section 7413(b) contemplates a fine for each day a minor source operates in violation of law, and [S]ection 2462 limits the number of days to five years before the filing of the complaint."); *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. CV-07-358-PK, 2007 WL 4118136, at *8 (D. Or. July 25, 2007), *report and recommendation adopted as modified*, No. 07-CV-358-PK, 2007 WL 4117978 (D. Or. Nov. 16, 2007) ("acknowledg[ing] the weight of case law supporting the Institute's arguments that its claim is not time-barred because defendants' violation is continuing or, in the alternative, because a new cause of action 'first accrues' each day that defendants' nonfeasance continues" and collecting cases to that effect); *Hamer v. City of Trinidad*, 924 F.3d 1093, 1100 (10th Cir. 2019) (explaining that the repeated violations doctrine allows recovery for only that part of the injury suffered during the limitations period). The total fine imposed on Ye may therefore only take into account the five years prior to the commencement of enforcement proceedings.

In the Court's order granting a TRO, it held that "[t]he penalty imposed . . . does not appear to be limited to those five years," so Ye was likely to succeed "in part" on the merits of her claim that the penalty is time-barred. ECF No. 10 at 5. In fact, the $998 daily fine, multiplied by the five years preceding May 12, 2026, totals $1,822,348. Ye is therefore not likely to succeed on the merits of her claim that the $1,820,352 fine is time-barred.

**2. Willfulness**

Section 274D(a)(1) only imposes penalties on a noncitizen whose failure to depart the United States pursuant to an enforceable removal order is "willful." 8 U.S.C. § 1324d(a)(1). There is a paucity of caselaw interpreting Section 274D. In other immigration-related contexts,

however, the Ninth Circuit has made clear that willfulness requires knowledge and intent. *See, e.g.*, *Espinoza-Espinoza v. Immigr. & Naturalization Serv.*, 554 F.2d 921, 925 (9th Cir. 1977) (noting that "[a]lthough the exact meaning of 'willful' may vary with the context in which it is used in a particular statute," in the context of willful misrepresentation of a material fact to procedure a visa, "it connotes . . . a voluntary and deliberate misstatement"); *Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005) (holding, in evaluating whether attempted entry of goods by means of a false statement is a crime of moral turpitude under the INA, that willfulness requires an act be done "deliberately and with knowledge").

The government contends that the willfulness requirement should be read to encompass reckless conduct.[4] ECF No. 29 at 18. The Supreme Court has observed that "where willfulness is a statutory condition of civil liability," it generally covers "not only knowing violations of a standard, but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52, 57 (2007) (discussing the Fair Credit Reporting Act and citing cases about the Fair Labor Standards Act and the Age Discrimination in Employment Act). *Safeco* and circuit cases applying it distinguish the criminal context, where willfulness may require knowledge. *See id*. at 60; *United States v. Hughes*, 113 F.4th 1158, 1161 (9th Cir. 2024). The government further argues that the civil-criminal distinction applies here. When Congress passed Section 1324d, which imposes "[c]ivil penalties for failure to depart," it expressly distinguished and preserved a parallel provision for criminal failure-to-depart penalties, recodified as 8 U.S.C. § 1253(a). *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, § 380(a), 110 Stat. 3009-546, 3009-650 (Sept. 30, 1996); 8 U.S.C. § 1324d(c) (savings clause providing that "[n]othing in this section shall be construed to diminish or qualify any penalties to which an alien may be subject for activities proscribed by section 1253(a) of this title").

However, the Ninth Circuit has rejected a "recklessness" mens rea for immigration provisions requiring willfulness, even in civil contexts. In *Espinoza-Espinoza*, the court

---

[4] Citing the Section 1324d IFR, the government also argues that a noncitizen can be found to be willfully present in violation of Section 1324d only when "the alien's failure to depart was a *knowing and deliberate act*." ECF No. 29 at 12 (emphasis added). The government does not explain the discrepancy in its argument.

considered excludability under the INA for procurement of a visa or other documentation "by willfully misrepresenting a material fact." 554 F.2d at 924. While acknowledging that the meaning of the term "may vary with the context in which it is used in a particular statute," the court held that "as used in the statute presently under consideration, it connotes to us a voluntary and deliberate misstatement." *Id.* at 925. The government argues that *Espinoza-Espinoza* is inapplicable because it concerned excludability, but does not explain why that distinction should matter.

In any case, even under a recklessness standard, Ye has raised serious questions going to the merits of her claim. The government repeatedly asserts that the bare fact of her removal order establishes reckless failure to depart because that order provided oral and written notice. *See* ECF No. 29 at 21 (government arguing that "[c]onfirmation that an alien has a final removal order is, effectively, confirmation the alien knows of his duty to depart the country"). The argument is at odds with the traditional understanding of recklessness. While recklessness is defined somewhat differently based on context, "criminal recklessness generally requires that 'a person disregards a risk of harm of which he is aware.'" *United States v. Rodriguez*, 880 F.3d 1151, 1159–60 (9th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "In other words, the standard requires that the defendant 'was subjectively aware of the risk.'" *Id.* at 1160 (quoting *Farmer*, 511 U.S. at 829). Similarly, in the context of civil penalties, the Ninth Circuit has held that "[a] person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk attached to his conduct, in gross deviation from accepted standards." *Consumer Fin. Prot. Bureau v. CashCall, Inc.*, 35 F.4th 734, 748 (9th Cir. 2022) (quoting *Borden v. United States*, 593 U.S. 420, 427 (2021)).

The government's argument that provision of a notice of the obligation to depart conclusively establishes that a noncitizen's failure to depart was reckless would read the willfulness requirement out of the statute by ignoring any evidence regarding the noncitizen's intent—but the record here contains such evidence. Ye states that she was never provided any written document or court order. Ye Decl. ¶ 13; ECF No. 33-1 ¶¶ 8-9. She does not speak or read English and was never informed in her language of any obligation to depart or deadline to leave.

Ye Decl. ¶¶ 4, 6, 8, 9, 12. She was at times represented by an attorney whom she had never met and with whom she could not communicate. *Id.* ¶ 8. She stayed in the United States to pursue her legal rights through the appeals process. Ye Decl. ¶ 13. She did not know whether China would accept her return. *Id.* Under these circumstances—where Ye did not understand the consequences of the removal order and was confused about the procedural posture of her case—the government's ability to establish that Ye recklessly refused to leave—let alone deliberately and with knowledge—is uncertain at best and doubtful at worst.

Moreover, the applicable regulations require DHS to provide "a brief statement of the reasons for the decision" in the order imposing civil penalties. 8 C.F.R. § 281.1(c)(1). Neither the Notice of Violation nor the Appeal Decision contained any such statement, nor did they otherwise explain the basis for finding that Ye's failure to depart was willful and therefore satisfied the statute's requirements. ECF No. 2-2 at 9, 38. Both documents consisted only of a sparse form on which the date of the original removal order was entered and a box checked repeating the language of the statute. *Id.* This does not suffice to establish willfulness or to satisfy the requirements of 8 C.F.R. § 281.1(c)(1). Ye is likely to succeed on the merits of her argument that her conduct does not satisfy the statutory requirements for imposing civil penalties under 8 U.S.C. § 1324d(a)(1).

### 3. Eighth Amendment Excessive Fine

The Eighth Amendment to the United States Constitution provides that "excessive fines [shall not be] imposed." U.S. Const. amend. VIII. The Excessive Fines Clause "limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'" *Austin v. United States*, 509 U.S. 602, 609–610 (1993) (citation omitted). "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." *Id.* at 610 (citation omitted); *see id.* (explaining that sanctions may serve more than one purpose, but the Excessive Fines clause applies as long as the sanction serves in part to punish).

Civil penalties under Section 1324d clearly fall within the scope of the excessive fines clause. They have no clear remedial purpose but rather expressly serve to deter unlawful entry and noncompliance with removal orders. *See* 90 Fed. Reg. at 27442. Black's Law Dictionary

states that a remedial law is one that is "intended to correct, remove, or lessen a wrong, fault, or defect." "Remedial," Black's Law Dictionary (12th ed. 2024). The statute at issue does "not appear to be clearly designed to remedy an existing wrong," *Layman v. Lahaina Divers, Inc.*, 23 F. Supp. 3d 1170, 1178 (D. Haw. 2014), and in fact the governing regulation states otherwise: "DHS believes that this effort will . . . help deter future unlawful entries and encourage greater compliance with removal and voluntary departure orders . . . ." 90 Fed. Reg. at 27442. This makes them akin to punishment under *Austin*. Finally, Congress itself identified the fine as a "penalty." 8 U.S.C. § 1324d. The government argues that "Congress clearly intended these penalties to serve a remedial, rather than a punishing purpose," ECF No. 29 at 24, but it offers no support in the language of the statute, the case law, or any other source. Nor does it explain how the imposition of a fine—particularly a fine of this extraordinary magnitude—could be said to remediate anything.[5]

A fine violates the Clause if it is "grossly disproportional to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). Courts afford some deference to Congressional judgments about the appropriate punishment for an offense. *See U.S. Sec. & Exch. Comm'n v. Murphy*, 50 F.4th 832, 849 (9th Cir. 2022). Nonetheless, the Ninth Circuit has prescribed four factors that are generally relevant to determining whether a penalty is grossly disproportional: "(1) the nature and extent of the underlying offense; (2) whether the underlying offense related to other illegal activities; (3) whether other penalties may be imposed for the offense; and (4) the extent of the harm caused by the offense." *Id.* at 849–50 (adapting similar factors from *Bajakajian* for the civil penalties context); *see also Pimentel v. City of Los Angeles*, 974 F.3d 917, 921 (9th Cir. 2020) (same).

Here, the underlying offense was the failure to self-deport in response to a removal order.

[5] In *Austin*, the Supreme Court held that "the question is not, as the United States would have it, whether [the penalty imposed] is civil or criminal, but rather whether it is punishment." 509 U.S. at 610. Because the Court's decision does not depend on whether the fines are civil or criminal, several of the government's cited authorities do not assist the Court, including *Oceanic Steam Nav. Co. v. Stranahan*, 214 U.S. 320, 337 (1909) and *Hudson v. United States*, 522 U.S. 105, 118 (1997).

It had no relation to other illegal activities. *See* ECF No. 2-2 ¶ 23 (Ye's declaration stating that "[d]uring all the years I have lived in the United States, I have filed taxes and obeyed the law. I have never been a burden on my community and consider myself to be a contributing member of society."). The first and second factors therefore favor Ye.

The government contends that the fine is proportional because Ye falls squarely within the class of persons the law targets. ECF No. 29 at 26. But that reasoning is circular: if a fine without limit were permissible whenever the person ordered to pay it fell within the targeted class, no fine could ever be excessive. The Court rejects this argument.

The third factor considers other penalties authorized by the legislature, which may serve as "measures of the gravity of the offense." *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1122 (9th Cir. 2004); *see also Pimentel v. City of Los Angeles*, 115 F.4th 1062, 1068 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2735 (2025). Willfully failing or refusing to depart within 90 days of a final removal order is also a criminal offense under 8 U.S.C. § 1253(a)(1)(A), which authorizes imprisonment of up to four years or a fine "under title 18." 18 U.S.C. § 3571 sets a maximum fine of $250,000 for any felony. The penalty imposed by the government here is more than seven times larger than the fine imposed for similar conduct in the criminal context, and exceeds it by more than $1.5 million. This factor suggests that the penalty imposed here is grossly excessive under the Eighth Amendment.

The government would have the Court also consider as a factor "the amount of the penalty authorized by Congress," asserting that such factor favors the government. ECF No. 29 at 26. But neither *Bajakajian* nor its progeny contain such a factor.[6] *Bajakajian* considered, as the Court does here, the penalties authorized under other legal frameworks. *See* 524 U.S. at 338–39 (holding that the low maximum sentence allowable under the Sentencing Guidelines "confirm[ed]

---

[6] In support of this purported factor, the government cites only to a page in *Bajakajian* that contained no enumeration or discussion of relevant factors at all. ECF No. 29 at 25 (citing *Bajakajian*, 524 U.S. at 334). It also cites *Collins v. Sec. & Exch. Comm'n*, 736 F.3d 521, 527 (D.C. Cir. 2013), but that case also does not support the government's argument. In that case, the District of Columbia Circuit applied the four *Bajakajian* factors in concluding that a penalty levied by the SEC against a securities broker for failure to supervise a subordinate was not excessive. The court did not say or suggest that it considered the fact that the penalty was within the range authorized by Congress.

a minimal level of culpability). But that case did not consider the authorized size of the penalty imposed as a factor on its own. Nor would such a factor make sense: the purpose of judicial review is to determine whether a civil penalty violates the Eighth Amendment ban on excessive fines. If a fine could be found to be not excessive simply because it was authorized by Congress, then every fine would be deemed constitutional and judicial review would serve no purpose. A penalty is not proportional merely because it is authorized by law; the question is whether it meets constitutional requirements.

Finally, Ye's offense appears to have caused minimal harm. In the years since her arrival, she has paid taxes, cared for her family, and committed no crimes. ECF No. 2-2 ¶ 14. In its opposition, the government describes certain conduct by Ye but identifies no harm from that conduct. ECF No. 29 at 27 ("Plaintiff came to the United States on a nonimmigrant visa in 2008, overstayed her visitor's term, and then filed a 'frivolous' application for relief from removal, lied to the government and remained in the U.S. more than eight years after the Ninth Circuit denied her petition for review.").

In assessing harm under this factor, the Ninth Circuit considers monetary harms to the state and the state's interest in ensuring compliance with the law. *See Pimentel*, 115 F.4th at 1068–69. Certainly, the government has incurred some monetary cost in seeking to enforce Section 1324d and collect a fine. And Ye appears not to have complied with the law requiring her to depart. But even considering both of those harms—which are not harms the government relies on in its brief—the harm caused by Ye's conduct is dwarfed by the size of the Brobdingnagian fine. Assessing a $63 parking ticket late fee, the Ninth Circuit in *Pimentel* held that absent an "'articulable correlation to any injury suffered by the [government],' the City's interest alone does not validate any fine amount that the [government] might arbitrarily impose. Otherwise, no fine—no matter how sizable or disproportionate—would ever violate the Excessive Fines Clause because the government always has an interest in enforcing its laws." *Id.* at 1069 (quoting *Bajakajian*, 524 U.S. at 340). The government has articulated no connection between its interest in enforcing the law and the $1.8 million penalty. This factor therefore does not support the government.

Each factor supports Ye or is neutral. Together, they suggest that the penalty assessed against Ye is "grossly disproportional." A fine of more than $1.8 million likely violates the Excessive Fines clause.

### 4. Due Process

Ye also argues that the procedures available for challenging[7] the imposition of the $1.8 million fine were insufficient to ensure due process under the Fifth Amendment. ECF No. 2-1 at 16–18. In deciding what process is due, the Court considers the factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

To say the least, "the private interest at stake is extraordinary." ECF No. 2-1 at 17. DHS imposed a penalty of $1,820,352 on an individual whose annual household income is $36,000, a ratio exceeding 50 to 1. Ye Decl. ¶¶ 20–24. She is the sole caretaker for a 76-year-old United States citizen who cannot care for herself as well as the primary caregiver of a school-aged minor. *Id.* ¶¶ 21-22. Enforcement would leave her and her family destitute. *Id.* ¶ 24. In the face of these facts, the government states only that "Defendants sufficiently accounted for an alien's property rights," ECF No. 29 at 28, but fails to engage with the magnitude of the potential deprivation.

The risk of erroneous deprivation through existing procedures is also high. While Ye and other noncitizens in her position are afforded the opportunity to submit written defenses and

---

[7] To the extent that she challenges the sufficiency of the procedures utilized *before* imposing the fine in the first place, Ye failed to exhaust those arguments before the agency. "The APA requires that plaintiffs exhaust administrative remedies before bringing suit in federal court." *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 965 (9th Cir. 2006) (citing 5 U.S.C. § 704); *see also Nat'l Parks & Conservation Ass'n v. BLM*, 606 F.3d 1058, 1065 (9th Cir. 2010) ("As a general rule, [courts] will not consider issues not presented before an administrative proceeding at the appropriate time." (quoting *Marathon Oil Co. v. United States*, 807 F.2d 759, 767–68 (9th Cir. 1986))). To the extent she challenges the sufficiency of the administrative appeal process, however, Ye could not have exhausted her claims because no avenues remained to do so. *See Soto Cedeno v. Bondi*, No. 24-1018, 2025 WL 1894954, at *1 (9th Cir. July 9, 2025) (holding that administrative exhaustion is "satisfied where there is no administrative remedy available as of right to exhaust").

documentary evidence, *see* 8 C.F.R. § 281.1(c), (e), they are denied an in-person hearing or any opportunity to cross-examine the evidence relied on by the assessing officer, *see* 90 Fed. Reg. at 27445. As noted above, a finding that a noncitizen acted willfully requires assessing their subjective state of mind and individual circumstances. A hearing is particularly important under those circumstances. *Cf. Lancaster v. Tilton*, No. C79-01630 WHA, 2007 WL 1807825, at *29 (N.D. Cal. June 21, 2007) ("An evidentiary hearing should be held in order to allow for factual findings regarding defendants' state of mind."); *In re Zilog, Inc.*, 450 F.3d 996, 1007 (9th Cir. 2006) ("[K]nowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing.").

The government asserts that, "[c]ourts have consistently held that paper hearings with a notice and an opportunity for written submissions satisfy due process, particularly where any disputed issues of fact can be 'adequately resolve[d]' 'on the written record,'" but cites only an unpublished two-decade-old Ninth Circuit case concerning the Federal Energy Regulatory Commission's approval of a corporate reorganization. ECF No. 29 at 29 (citing *California ex rel. Lockyer v. FERC*, 60 F. App'x 23, 24 (9th Cir. 2003)). As a threshold matter, except under circumstances not present here, "Unpublished dispositions and orders of [the Ninth Circuit] issued before January 1, 2007 may not be cited to the courts of this circuit[.]" Ninth Circuit Rule 36-3(c). Thus, it is doubtful that this Court can consider *Lockyer* for any purpose. Even if it can, however, that case does not address whether a paper hearing is adequate under the circumstances present here, where a decisionmaker must evaluate the appellant's intent.

The circumstances of Ye's case strongly reinforce the Court's conclusion that she received inadequate process. The government concedes that it deliberately *declined* to consider the evidence she submitted, insisting that it need only have considered "whether an alien received a final removal order, thereby knowing of her duty to depart," ECF No. 29 at 29, and that it need *not* have considered any of the arguments Ye raised in her written submission, which included arguments concerning the "willfulness" factor, the statute of limitations, and the Eighth Amendment's excessive fines clause, *id.* at 23, 31. But each of the arguments Ye raised went to a potential "erroneous deprivation." The government's position that written submissions suffice is

therefore undercut by both the record in this case and the government's own characterization of its obligations.

The third factor weighs "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. As with the first factor, the government largely declines to address the merits of the third one. Rather than analyzing the administrative cost of providing hearings to noncitizens facing $1.8 million fines, it argues that the government has a weighty interest in encouraging compliance with the law. That is not the correct inquiry. The appropriate question is whether affording the procedure requested by the Plaintiff would place a disproportionate burden on the Defendant. *Buckholz v. Kelso Hous. Auth.*, 781 F. Supp. 3d 1148, 1156 (W.D. Wash. 2025); see *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208–09 (9th Cir. 2022) ("The longer detention lasts and the longer the challenges to an IJ's order of removal take, the more resources the government devotes to securing an alien's ultimate removal."). Moreover, the government's interest in encouraging compliance with the law suggests a corresponding interest in assessing fines only against those subject to the law, which counsels in favor of—not against—additional process. Granted, these factors must be considered in view of the large number of noncitizens potentially subject to penalties under Section 1324d. Seen in that light, this factor weighs slightly in favor of the government. Nonetheless, this factor is insufficient to outweigh the very high private interest and the substantial risk of error under the current procedures. Ye has demonstrated that she is likely to succeed on the merits of her due process claim.

#### 5. Whether the Agency Action Was Arbitrary and Capricious

An agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "[A]n agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

expertise." *Id*.

Here, DHS failed to consider Ye's individual circumstances, provided no explanation for the penalty amount (which was the maximum permitted by the statute), and issued a form decision with no individualized analysis. ECF No. 2-2 at 9–10, 38–40. The Appeal Decision affirmed the penalty without addressing a single argument Ye raised, including that her failure to depart was not willful, the fine was time-barred, and it violated the Eighth Amendment's excessive fines clause. ECF No. 29 at 30–31; ECF No. 2-2 at 18.

The government argues that the applicable regulations only require it to confirm whether the noncitizen "(1) is subject to a final order of removal and is, therefore, aware of her obligation to depart; (2) remains subject to a final executable removal order, rather than an order that has been stayed or otherwise impacted by a grant of protection or relief from removal, or a grant of lawful status; and (3) is present in the United States." ECF No. 29 at 23 (citing 90 Fed. Reg. at 27442–43). Although this may be an accurate interpretation of the operative regulations, it is insufficient under the language of the statute, which unambiguously requires the agency to make a finding of willfulness. 8 U.S.C. § 1324d; *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024). As set forth above, proof of willfulness requires evidence beyond the mere existence of a removal order. And in her notice of appeal, Ye raised individual circumstances speaking to the absence of willfulness. ECF No. 2-2 at 18, 23–27. The agency refused to consider them. It was also arbitrary and capricious for the agency to fail to address Ye's arguments that the fine is excessive in violation of the Eighth Amendment and that it is time-barred.

Neither the skeletal form comprising the initial notice of fine nor the appeal decision articulated any basis for a willfulness finding. The Court concludes that Ye is likely to succeed on the merits of her claim that the penalty determination was arbitrary and capricious.

**B. Irreparable Harm**

To justify emergency relief, a plaintiff must demonstrate that irreparable harm is "likely" rather than merely "possible." *Winter*, 555 U.S. at 22. Ye has met her burden for at least two reasons. First, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

*Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because Ye has shown that the fine likely violates the Eighth and Fifth Amendments, she has also shown irreparable constitutional harm.

Ye has also shown material irreparable harm. As she argues, the ten-day payment deadline listed on the invoice she received has expired. ECF No. 2-1 at 19. She is now subject to compounding debt as a result of administrative fees, interest, and late penalties; collection litigation and referrals; credit bureau reporting; and administrative offsets of any eligible federal or state payments due to Ye. Ye Decl. ¶¶ 17, 24–27; ECF No. 2-3 at 31. As a result, she faces irreparable credit damage and the stress of impending financial instability. These impacts would also extend to her partner and her two dependents, a minor child and a disabled elder relative. Ye Decl. ¶¶ 20–21. Ye has established a high likelihood of irreparable harm in the absence of a temporary restraining order.

**C. Balance of Equities and Public Interest**

Finally, the balance of the equities and the public interest tip sharply in Ye's favor. These factors "merge where, as is the case here, the government is the opposing party." *Leiva-Perez v. Holder*, 640 F.3d 962, 970 (9th Cir. 2011) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Here, while Ye would suffer potentially irreversible constitutional injury, credit damage, and financial instability, there is no harm to the government from a short delay in recovering the penalty amount while these proceedings are pending. If the penalty is ultimately enforced, the government may collect the full amount with interest at that time. Its ability to "effectuat[e] statutes enacted by representatives of its people," *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025), and "enforce[] the immigration laws," *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1220 (D.C. Cir. 1981), will be unhindered. The nature of Ye's conduct and absence of evidence of willfulness, as well as her long history as a law-abiding and tax paying community member, also support emergency relief.

**D. Bond**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P.

65(c). The court has "discretion as to the amount of security required, if any," and "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). Here, the Court has concluded there is no harm to the government from temporarily enjoining collection of the penalty. Moreover, Ye has demonstrated that she is indigent, with no independent income and a household income of $3,000 a month. ECF No. 1-3. The Court waives the security requirement.

## CONCLUSION

Ye has shown a likelihood of success on the merits, irreparable harm, and that the balance of the equities and public interest support emergency relief. The operative temporary restraining order is converted into a preliminary injunction on the same terms. Accordingly, IT IS HEREBY ORDERED that:

Defendants and their officers, agents, employees, and all persons acting in concert with them are TEMPORARILY RESTRAINED AND ENJOINED from, as to the civil penalty of $1,820,352.00 assessed against Plaintiff under Penalty Tracking Number C260094794: (a) enforcing, collecting, or taking any action to collect the penalty or any associated debt; (b) referring the debt to the U.S. Department of Justice for collection litigation; (c) initiating or continuing any administrative offset of federal or state payments due to Plaintiff; (d) referring the debt to any private collection agency; (e) reporting the debt to any national credit bureau or credit reporting agency; (f) taking the debt into consideration, as a negative factor, in any immigration-related proceeding involving Plaintiff; and (g) assessing any interest, administrative costs, or late payment penalties during the pendency of this Order.

**IT IS SO ORDERED.**

Dated: September 1, 2026

JON S. TIGAR
United States District Judge